Good morning, Your Honor. Angela Alioto for all four plaintiffs. All right. Your Honor, since there are two different issues here, one being jurisdiction and one being arbitration, I was not sure who would go first since the two different parties. The parties haven't agreed? The parties haven't agreed on who should go first? No, but... We believe the jurisdiction issue is positive here and that plaintiffs should go first, given that they're appealing that issue. I think that's probably right. That's probably correct. Okay. Thank you very much. Your Honor, all throughout this litigation, Hitachi was based in Tarrytown, New York. It wasn't until the very end of discovery when we had a trial date that all of a sudden, and we also had the switch of a judge, all of a sudden Hitachi comes in after having lost their motion to compel and says, oh, there isn't jurisdiction here, there isn't diversity here. After having taken the deposition of the president who was in Tarrytown, then Brisbane, then back in Tarrytown, and all payroll is in Tarrytown, and all of the lawsuits filed by Hitachi, where even they have been the plaintiffs and claimed diversity when it is in Tarrytown, New York, all of a sudden they take this motion saying there's no jurisdiction. And the reason they did this, according to what opposing counsel said at the hearing, was because the new judge that we were given, Judge Alsop, in fact had just made a decision in a United case where he decided that United, in fact, was located, its principal place of business was, in fact, in the state of California. Having said that, there are documents after documents that you all have in our briefing that Hitachi themselves say our principal place of business is in Tarrytown, New York. It isn't until this case, and we have found no other case since, where they are saying that it, in fact, is not Tarrytown, New York. Have you found a case since where they said it was Tarrytown, New York? Yes, Your Honor, I believe that it's in the document with the list of cases. I mean, was that fact presented to the district court, or has that happened since the district court's decision? Since the district court's decision, Your Honor. Before and after we have found no case where they have said that California was the principal place of business. We have listed in our briefs the cases where they have said that Tarrytown is the principal place of business. And some of those cases were after this case? I believe they were, but before I say that, Your Honors, I would like to, excuse me. Okay, the ones that we have cited in the brief are all before the decision in the district court. So, again, having taken the deposition of the principal person and payroll being paid in Tarrytown to today, now the president and CEO in Tarrytown to today, all management meetings were in Tarrytown. Everybody would fly to Tarrytown to meet. No management meetings were in California. We firmly believe that the jurisdiction, the proper jurisdiction for this case is in diversity jurisdiction federal court. This is a fact question? You know, Your Honor, I believe it's a fact question based on the president's testimony. But I also believe that there is a mixture of procedures since. The judicial admissions, one, not only us, but several of the plaintiffs have relied on throughout the cases that were filed where they say that their principal place of business is in Tarrytown, is a little bit of a procedural crossover with the factual decision by the president of the company, where he says clearly in the evidence that all of the management decisions are made in Tarrytown. Would the discovery taken to date be usable in state court? Yes, Your Honor. My understanding is the district court looked at a number of factors, including where the officers were located, correct? Yes, Your Honor. The number of employees in California and New York. Is that correct? Well, there's no evidence of that. Well, these were the factors that the district court recited, correct? Yes, Your Honor. The location of the real estate owned and leased, the location of inventory, origin of sales, and the location of fixed assets. Those were the things the district court took into consideration, correct? I believe it did, Your Honor. But it also had a list of other considerations that were taken into consideration that are the major definitions of principal place of business, i.e., where is this business? Where is it located? Where does it do its major business? And that was Tarrytown, including payroll, including the president's location, including the offices where all of the presidents and managers and vice presidents of this company meet. Bowling recently moved all of their executives to Chicago, yet they still produce their airplanes in Seattle and their helicopters in Arizona. Where is their principal? Where is their place of operations? Is it Chicago? It's not Seattle? Your Honor, manufacturing in Seattle, principal people who make the rules and regulations, who govern the policies of the corporation. It would be inappropriate for any judge to construe in Boeing's instance that the fact that thousands of their employees, the bulk of their fixed assets, et cetera, et cetera, are in Seattle to conclude that their place of operations is Seattle. Your Honor, I would never say that it was inappropriate that a judge do anything. So, no, I don't think it's inappropriate. I think it's a matter of opinion. Okay. I think it's a matter of where one feels the heart and soul of this company really is. And if you're in California state court, would the, in your view, would the arbitration provisions be enforceable? Oh, absolutely, Your Honor. As the attorney in Circuit City v. Adams went to the Supreme Court, dismissed it, dismissed it, we'll try again someday, but coming back to the Ninth Circuit in Circuit City v. Adams, the courts used Omandaris and ruled that, in fact, Mr. Adams' contract, that arbitration clause in the contract he signed was, in fact, unconscionable and we were sent back to state trial court. So our own case is our precedence here, but we absolutely believe that the clauses in this contract are unconscionable, many of them, not just one. We believe as people who have been fighting arbitration clauses for the last three years on a regular basis that one suffices because these cases are so difficult to get good representation. A client comes to you who is very poor generally, generally very much out of a job, generally very mistreated, does not have money at all to be able to go forward the way this has three and four years. It is an absolute deterrent to bringing a fiat cause of action when there are arbitration clauses. We see it all the time. Why can't you bring a case on a contingency arrangement and arbitrate it? We do bring them on contingency, Your Honor. That's the only kind of case. And you can arbitrate the case, can't you? Your Honor, the cases that I have arbitrated have been a nightmare fundamentally. The fundamental rights are missing. You ought to hear what some people say about proceedings in our court. Well, Your Honor, I... A lot of them say that is the worst nightmare that anybody can be infected with. Well, I've lost a lot of cases and I've won a lot of cases in this system. I think this is a great system. I do, too, but I've already criticized... I think it's a great system. And for a civil rights issue, an arbitration is absolutely smothering, smothering. Why is that? Tell me what... Because, Your Honor, the arbitrator has the full reign to do whatever he wants. The day after a witness leaves and goes back to Mexico, they bring in new evidence never seen before. Arbitrator accepts it and boom. It's just absolutely out of control. Don't they have to go to court then to enforce that arbitration agreement? Well, in fact, we are, Your Honor. We have appealed it, I believe, to you all. No, I'm talking about when the arbitrator has acted like you just described, doesn't the winner have to take that arbitration outcome to court and ask that it be enforced? No, Your Honor. I wish they did. You don't? I wish they did. You mean the arbitrator sends a marshal out to collect the money? No, Your Honor, I represent the plaintiffs. We lose, we lose. I wish there was much more court supervision over these arbitrations, much more, not just in procedure but also in fact. It's very difficult. The lack of evidence that is allowed, the amounts of money that is spent. One arbitration for five days was $56,000. That's stunning to me. And the lack of procedure, do notice, it is fundamentally unfair in a civil rights setting. Well, the Supreme Court said it's all right, though, haven't they? Five to four. We just missed it. We shall try again. However, the Ninth Circuit said, no, no, this is unconscionable, this clause. That's right. That's right. Are you asking us to assume that if it went to state court, a state court would not conclude as the district court did here about the unconscionability of the arbitration clause? No, Your Honor. The trial court here under Judge Oreck said, no, I'm sorry, that arbitration will not be compelled in this instance. I understand that. Are you asking us to assume that the opposite result would obtain if you went to state court? No, I believe in state court arbitration would not have been compelled. All right. Why don't you go there, then? Why are you fighting going there? Your Honor, we were here. We were a couple of weeks away from trial. We don't want to start all over again. This has been years in coming. Now, it's been a little while since I litigated, but when I litigated on behalf of plaintiffs, I did defendants' work, too. I hated federal court. You know why? The unanimous jury requirement, the defendants just love that. Do you have a unanimous jury requirement in state court in several cases? No, Your Honor. It's 9 out of 12, however you are. So you're better off in state court, aren't you? No, Your Honor, we're not. We're here. I personally have a great admiration for federal court. You've convinced us of that. No, but seriously, I have won many federal court trials, or a couple, let me not say many, and unanimous juries do the right thing. If you're wrong, you're wrong, and you lose. I've done a lot of that, too. All they have to do is convince one juror. All they have to do is convince one juror. On the other hand, in my kind of cases, they do the right thing unanimously, Your Honor. It just is. It's just a reality. The unanimous jury does not stop us by any means from wanting to be in federal court. There's an elegance about federal court, not that there isn't in state, but federal court is just fine for civil rights plaintiffs. Okay. You want to reserve the rest of your time? I would like to reserve some of the time to go over the unconscionability parts of this, or would you like me to address the unconscionability? No, it's up to you. It's your 20 minutes, and you've got eight and a half left. Okay. Then let me just quickly go over this particular agreement. First of all, Your Honors, as you've noted from the documents, it only pertains to one of the plaintiffs who has. Out of the four plaintiffs, only one has an arbitration agreement, and that particular arbitral regime provides for insufficient discovery. I think I've just discussed the concept of discovery and the concept of admissible evidence and what is not admissible in an arbitration setting. The arbitrator can willy-nilly say, no, that's not acceptable, whereas in a court of law, it would absolutely be acceptable. That evidence is all you have to win a case, and that curbing of your ability to give all the evidence you possibly can for the benefit of your plaintiff is absolutely suffocating. So this clause in and of itself should throw this arbitration clause out based on unconscionability under Armendariz. The second one is it contains an express prohibition against any judicial review of the arbitrator's final award. Now, the concept of also giving the arbitrator the ability to throw out parts of the arbitration clause which are already gotten there is just giving once again more power to them to also do the opposite, and that is enforce the ones that are not so good for the client. If the arbitration clause is enforceable, it's got to be enforceable in its whole. I don't see how it can be bifurcated by the arbitrator who is also the person whose mercy you are at. So the concept that there's a prohibition against any judicial review whatsoever is, in my opinion, un-American, but it just is devastating for the interest of plaintiffs in civil rights cases. The arbitration regime in this particular arbitration clause contains limitations on damages. Where is the fairness in that? Where is the point of a civil rights case is to be able to present your case and get that which a jury or a judge sitting believes that the plaintiffs deserve, and then that gets to be appealed. In other words, there are many more than one eyes looking at this. The concept that just one pair of eyes looks at this and says, well, you know, we're going to limit these damages in and of itself. If I were a fee help plaintiff, I'd think 20 times before I would consider filing a complaint for discrimination, I'd think maybe I should endure this discrimination, maybe I should not hassle with this, because that clause is devastating when it's a you take money away that would ordinarily be due and limit it to what the wrongdoer, the defendant, wants you to limit it to. Number three, the arbitral regime contains, excuse me, four, contains an overly short six-month statute of limitations. So out of nowhere, the arbitrator gets to take away six months of a right that is, in my opinion, fundamental to civil rights causes of action once the legislator in a particular state, in our case California, has spoken. You get a year. It's great to have the two years, as I heard in Hawaii, because people who really have been discriminated against have a hard time coming to grips with that discrimination sometimes, and they don't always act immediately. To make it even shorter is more unconscionable in and of itself than, in my opinion, the other two, with the damages and the evidence being unconscionable also. And then lastly, Your Honors, this particular arbitration clause imposes potential liability for the arbitration form fees. These are poor people. We have walked away from many a cases where they end up paying fees they don't have and losing. That can't be. It just can't be. No one would bring these cases if they had that kind of risk on the other side of the aisle. No one would bring these cases, and we would have in the state of California, discrimination that goes on in the workplace. It's simply unbelievable, and it would be left intact and continue without anybody stopping it if that were the case where a plaintiff would have to come up with a significant amount of money for fees for an arbitrator where the entire system, in my opinion, is not fair in the first place. And then to end, Your Honors, the case Engel v. Circuit City, it's amazing how many of these cases are Circuit City, but presents a rebuttable presumption. And you will see that there's absolutely no evidence whatsoever in this record that they rebutted any of this and any of what Judge Orr stated in his denial of the motion to compel arbitration. Thank you very much for listening to me. Thank you. May it please the Court. Good morning, Your Honors. My name is David Reese. I represent Defendant Hitachi. We believe that the jurisdictional issue here is dispositive. Initially, I was expecting to address the issue of whether our admission and our answer could confer upon this Court's jurisdiction that it doesn't otherwise possess, which I thought was the only issue on appeal on the jurisdiction. Counsel has talked about some of the Tosco factors. The Court here clearly applied your Ninth Circuit Tosco factors to determine that California was Hitachi's principal place of business at the time the complaint was filed. Plaintiffs do not even attempt to argue in their briefs that the Court committed clear error in reaching that conclusion. Is it correct that prior to this case, Hitachi had filed in other cases statements that its principal place of business was Tarrytown? There are three cases, Your Honor, and they are in the record at pages 443 to 463 of the excerpts. 443 to 463. There are three cases that were filed prior to the complaint in this action in which Hitachi answered. One was in 98, where they admitted New York was its principal place of business. One was in 1999, where Hitachi admitted that New York was its principal place of business. And one was in 2000, where it was a long allegation in the complaint saying that Hitachi was a corporation incorporated in California and had its principal place of business in California, and they denied the whole clause. So it's unclear exactly what aspect of that they were denying. Have they filed a case asserting the principal place of business to be other than California? Not that I'm aware of since this case. In this case, in March of 2001, we admitted in our answer that the citizenship litigants was diverse. Later that year, in the fall of 2001 and December of 2001, Hitachi, for the first time that I am aware of, in two court cases that are cited in the record, denied that New York was its principal place of business. After those two cases, we went back and looked at the facts at the time the complaint was filed in this case, and based on an examination of all that evidence, determined that by that point in time, the operations of California, such that California, under each of the Tosco factors, eclipsed New York as the principal place of business. And when that became known, we raised it with the district court. There's a doctrine called judicial estoppel, where you take advantage of a position and you are then estopped to deny that position. Now, does that apply here? You didn't bring the case claiming to be other than a resident of New York. Plaintiff brought the case in federal court, which, as Your Honor pointed out, is unusual in these types of cases from our perspective as the defendant, for the plaintiff to bring in federal court. She said she loves federal court. She loves federal court. There are no federal causes of action fled. The issue boils down to this, Your Honor. Can Hitachi, in its answer, by saying the litigants are diverse, create federal subject matter jurisdiction here when, in fact, the parties are not diverse? What's your position regarding the use of discovery taken to date if this matter were returned to state court or sent back to state court? I think all the discovery that's taken, other than the jurisdictional issues, obviously, the court allowed 60 months on that, and that really wouldn't be relevant anymore. But the discovery, all the discovery, and there's only a month's worth taken on the substance, would be usable in any subsequent action. Do you stipulate to that? Yes, I would, Your Honor. I stipulate that the discovery on the merits that it was taken. I'm not sure. Let me put it this way. The discovery could be used, whether it's admissible or not, I think would be subject to evidence objections. So I'm not saying it's all admissible, but certainly. Oh, of course, of course. Certainly the discovery would be used. Now, it was suggested it might be sent to state court. This case has never been in state court, has it? This court has never been sent. This has never been sent. This is a dismissal. Correct. If we uphold the dismissal, presumably they would refile in state court? Yeah. Yeah, I don't know whether they would or not. Let's assume they did. What would your position be with regard to equitable tolling of any statute? I don't know, Your Honor. I'd have to look at the law on that in California and see whether in a situation like this, where it's being in federal court, whether it is tolled. And I don't know the answer to that question. I'd have to do research into California law, which I think would govern here. I think it would have an effect on the equitable estoppel that I suggested. If you have gotten an advantage by taking the statute of limitations period away from your opponent and waited until later and then filed a change in the position you took, you might be estopped from doing that, even though you can't confer jurisdiction. You might be estopped to deny it. I think, Your Honor, that would be – well, I think there might be an issue in the state court. I think in terms of jurisdiction, it is clear from a long history of Supreme Court cases, every civil procedure student in first year law school learns this. The parties cannot – Well, not all of them learn. Well, that's true, Your Honor. They have the opportunity to learn it. I do teach at Hastings, and most of my students, I think, do learn. But the parties cannot, by consent, stipulation, waiver, action or inaction, confer jurisdiction on the court. Rule 12H3 of the Federal Rules of Civil Procedure codifies this principle. It says whenever it appears by suggestion of the parties or otherwise that the court lacks subject matter jurisdiction, the court shall dismiss the action. Of course, if this were a remand, we couldn't review it, even though everybody seems to agree that the facts were wrong. If it's remanded on the basis of 1404 or whatever it is C, I forget now the numbers, it is not reviewable. Right. And this, as you say, is not a remand situation. That's right. The Supreme Court in a case cited in our brief, American Fire and Casualty v. Finn, it's on page 24 of our appellate brief here. The court determined that even a defendant who had removed the case to federal court asserting jurisdiction was not a stop even after judgment from challenging that jurisdiction. And obviously removal, I would submit, is a far more strenuous assertion of jurisdiction than a mere statement in the answer that the litigants are diverse. And the court there clearly said the jurisdiction of the federal courts is carefully guarded against expansion by judicial interpretation or by prior action or consent of the parties. And for that principle, the court in American Fire and Casualty cited an earlier case from the Supreme Court from 1880 called People's Bank v. Calhoun. And for this, this principle was so fundamental in 1880 that the court in People's Bank v. Calhoun said it needs no citation of authorities. Usually the remark made in a brief when you can't find any. Yeah. It's a remark made by the Supreme Court in 1880, and maybe it was – but it was so fundamental at that point that you – It's a time-honored rule. Yeah, to say the least. And this Court twice, directly on point in Resnick v. LaPaz Guest Ranch, which is a case cited on page 25 of our briefs, and in Barkhorn v. Adlib, which is on page 25 to 26 of our briefs, in Resnick, the appellee – the argument was that the appellee's admission of jurisdictional facts in the pleadings precluded the appellee by wavering the estoppel from later challenging the court's jurisdiction. And the court – this Court gave that argument very short shrift, saying emphatically the argument is clearly without merit. The holding was appellee was – appellee was clearly not estopped from raising the question by any prior pleading or admissions in the case. Barkhorn is similar. That's a case where the defendant failed to deny some jurisdictional allegations. The court said ordinarily failure to deny something in your answer is a binding admission. However, in this case, it related to the jurisdiction of the court on diversity grounds. It didn't bind them. It couldn't be waived. I think the points on that are – are clear. In terms of the cases plaintiffs rely on, there's – there's a couple. I don't think any of them change this result in this longstanding principle. There's the Singer case from this Court where the plaintiff in that case had admitted that the amount in controversy was more than $50,000. There, the court said, well, the plaintiff is the master of his claim. He determines how much he's claiming. We'll go with what he says. And they used that to determine jurisdiction. Even there, though, the court – it wasn't a binding admission. The court said the district court's exercise of discretion to accept the admission as evidence was supported by the plausibility and it was facially apparent from the complaint. So that case does not stand for the broader proposition that we can admit jurisdiction in our answer and then deprive the court from relooking at that. They also cite a couple cases, American Title Insurance v. Laslo, which is a case from this Court, talking about generally judicial admissions. That case has nothing to do at all with subject matter jurisdiction. They also cite a Ferguson case from the Sixth Circuit. That case was one where the employer – admitted that it was an employer under the FLSA and the court used that to determine that there was jurisdiction. The court there made a huge distinction between admitting one fact that might be used to determine jurisdiction and admitting jurisdiction. Here, diversity of citizenship is clearly not a single fact. In fact, it is a legal standard unto itself, which depends on the analysis of numerous facts, as evidenced by the Costco case and all the factors that are at issue there. If we tried to even stretch the Ferguson case any farther than its facts, it would be clearly inconsistent with Resnick, Barkhorn, and the U.S. Supreme Court in American Fire. Finally, on the jurisdictional point, if plaintiffs were correct that Hitachi could confer jurisdiction on this Court by making a statement in its answer when the Court otherwise doesn't have jurisdiction, that would violate yet another fundamental bedrock legal principle, which is that the Court, even on appeal and even at the Supreme Court level, has a duty to raise the issue of jurisdiction sua sponte if there's any issue and to satisfy itself that the Court has jurisdiction. And if Hitachi certainly, in a statement in its answer that the litigants were diverse, could not deprive this Court or any other federal court of that duty and responsibility. So we think the jurisdictional issue is clear. A couple of factual points. As I said, there's no clear error in the district court's findings of fact under Costco. Contrary to what counsel said, there is numerous evidence in the record. There are declarations. There's lots of data. As you can see from the district court's opinion, he was very specific in finding that the number of employees were greater in California, leased and owned real estate, fixed assets, sales shipped to, sales shipped from, tangible assets, inventory. Very specific numbers. They're in our brief at pages 18 to 21. And they are in the record, the excerpts at 267, following down to basically to 500 in the record. One factor that counsel mentioned was that the officers of Hitachi were in New York. That's not true. As evidence from the record, the 12 out of the 15 officers of Hitachi, at the time the complaint was filed in this case, were resident in California and not in New York. And the district court so found in his rulings. And it's in the record. We believe that this jurisdictional issue is dispositive and the Court need not reach any of the underlying arbitration issues. However, I will use the rest of my time to address some of the points counsel made, if the Court is so inclined to hear me. It's your time. Depends on how firmly you feel about being correct on the first issue. I believe that is dispositive, Your Honor. And I believe that the Court is without jurisdiction. Nothing we can do in our answer could have changed that. But I will address the arbitration issues quickly. The Court below denied Hitachi's motion to compel arbitration based on two cases from this Court, Duffield v. Robertson-Stevens and Lye v. Prudential. The issue that the Court raised with Duffield v. Robertson-Stevens has been decided already by this Court, not in the en banc loose forward petition that's pending, but in Circuit City v. Nodged, which is a case from 2002. In that case, this Court held that whereas here plaintiffs bring a California FEHA claim and no accompanying Title VII claim, that Duffield does not preclude arbitration of the FEHA claim. Right on point. As to the Lye v. Prudential case, the Court below held that Lye and its progeny, Nelson and Kumitz, two other NYSERDA cases, required plaintiffs to knowingly, and that was the key, knowingly waive their right to a judicial remedy. And the Court below held that in this case they had not done so. On the Lye point, the Court was wrong for two reasons. Number one, Lye is a case under the Federal Arbitration Act. This is a case where we brought a motion trying to compel arbitration under the California Arbitration Act of a California state law claim. Assuming that the Court had jurisdiction, and I'll assume that for this argument, it was diversity, and as a Federal court sitting in diversity jurisdiction trying to determine whether California claims are subject to arbitration under the California Arbitration Act, I submit that the Court was required under Erie v. Tompkins to apply California law. No California state law case has ever adopted the Lye v. Prudential knowing standard. That is, an FEHA case has not been adopted by any California court, and, in fact, most other Federal circuits have criticized it. So as a first matter, the Court was wrong to even apply it. Second, as a factual matter, if we were to apply Lye's test that the waiver has to be knowing, that was clearly, as a factual matter on this record, met. The arbitration policy here clearly states that the claims subject to it include discrimination on the basis of race, including Title VII and any analogous Federal, state, or local laws. That's in the record at 63 of the excerpts. Just a question of procedure. If we agree with you on the district court's reliance on Duffield as being inappropriate in light of later events, do we reach the question of unconscionability directly or remand it to the district court since the district court didn't reach it? Well, that's interesting, Your Honor. I think you can reach it. The only issue, I guess, that I would say is an exception to that. I mean, there are a number of factors they cite as to whether it's unconscionable. And the only issue that I think might require greater factual record to the extent that you agreed with their argument is their claim that this contract lacks mutuality. And the reason I say that is, well, first, that was never raised in the district court. This appeal is the first time that we've ever heard the argument that the contract is not enforceable because the arbitration provision is not mutual. Well, assuming that unconscionability had been reached by the district court, and let's say the district court had held that the agreement was unconscionable, how would we, on what basis would we review that? De novo, or would we be deferential in that review? In this case, there is no evidence other than the paper evidence in the record, so I think you can review that de novo. There's no credibility determination. The district court didn't look anybody in the eye to see whether they were telling the truth. This is all a paper record. But this has been held that the standard of review is the same when it's printed material or when it's live witness. I think the denial of a motion to compel is reviewed de novo. In this case, the Court, setting aside lie and setting aside Duffield v. Roberts and Stevens, the Court here actually found that the plaintiffs had entered into arbitration agreements and that those agreements could be enforced. He found that there were a couple provisions, very minor provisions, that were unconscionable, but those were such that they could easily be severed, and the Court said that he would. This was in response to our motion to stay the district court proceedings pending the arbitration appeal. He went back in that. In order to determine whether he should stay the proceedings, he looked at whether he thought we had a substantial chance of prevailing on appeal here, which is sort of an odd standard because he denied the motion in the first case. If he thought we had a substantial chance of prevailing, I don't know that he would have denied it. In any event, that was the standard, and he went back at that point and he looked at not only Duffield and lie, but he went through all these unconscionability arguments and determined that most of the provisions and most of the issues raised by plaintiffs were not unconscionable provisions and that there were two, I think, he found, but that those could easily be severed. The mutuality point that I was alluding to earlier, this agreement does require Hitachi to arbitrate all its claims against the employee and only exempts certain types of claims for injunctive relief relating to an alleged threat or disclosure of trade secrets or intellectual property. Even in that case, however, the merits of any intellectual property or trade secrets claim would be subject to arbitration. It should be injunctive relief provisions. And that, of course, is not at issue here at all. There's no such claim. Armendariz, despite some of the arguments that we've heard, does not require the agreement to be perfectly mutual. It only requires the term of art the Court used was a modicum of bilaterality, which the Court said did not mean that it has to be completely mutual. You're talking about Armendariz? Armendariz. And they said that the stronger party in bargaining could reserve for itself some extra type of protection for which it had a legitimate need. And so, as I said, the only factual finding that was not made below, because there was no record on it, was this mutuality. If the Court were to find that that very narrow carve-out for injunctive relief, not even intellectual property claims but just injunctive relief, made the agreement non-mutual under the modicum of bilaterality standard of Armendariz, then I think there would have to be some factual record as to whether Hitachi had a legitimate commercial need for that provision. And I think we'd be entitled to present evidence on that that we've been denied. And as I said, the issue was never raised below. This contract also has a severance agreement. So to the extent there's anything that is unconscionable in isolation, the agreement provides for its severance. And the California courts on that point have said that unless the agreement is permeated with unconscionability, and I think the Ingle case, this Court said, if it shows an insidious purpose running through the contract, absent those situations, the Court should sever any unconscionable provisions. In this case, we don't believe there are any. All right. Thank you. Thank you, Your Honor. You had some time left, I believe. Two seconds. First of all, Your Honors, the concept that if it were to be sent back to State limitation issue in and of itself would be rewarding the defendants for not having filed the motion to compel arbitration in State court in the first place. In other words, if they felt that there was no diversity, you can file a motion to compel is an action in and of itself. They should have filed it in State court in the first place instead of filing it in the Federal court. Now, in the Federal court, they lost it. Now, whether or not opposing counsel is saying that they lost parts of it or that no part of it was saved. So they lost it, and there is no arbitration in this case according to Judge Oreck. So if we were to agree that there was no jurisdiction and we were to go back to State court, we'd be, A, starting all over again. B, the discovery would have to be redone in certain aspects because you do discovery differently when you are aiming at Federal court or aiming at State court. Different questions would be asked. Managing agent questions would be asked. There's no managing agent in Federal court, whereas in State court there is. So all sorts of discovery would have to be redone. And then if they're saying that their principal place of business is in the State of California, then they're admitting managing agent to a serious degree. But now the company isn't here at all. They're all in Tarrytown. And our clients have been let go except for one of them. So with all due respect, we have relied on their judicial admissions time after time that this was a diversity, there was diversity jurisdiction, and for them to be allowed to change it at this late date is a terrible detriment to my clients and a real unknown as to what happens with the statute of limitations in the State court, not to mention years of litigation in San Mateo. We relied on it. It wasn't until the last minute after all of this motions, the motion work in this case has been incredible, all of a sudden they come in with a diversity issue. It would not be fundamentally fair to allow that to undo all of the prior work that has been done in this case and have the plaintiffs start over again. It's not just a matter of the arbitration being unconscionable, but it's a matter of us having relied on their representations that in fact they are, their principal place of business is Tarrytown, New York. Having said that, I stand by my prior statements of fact that the principals all meet in Tarrytown and that the main man went back and forth between Tarrytown and Brisbane, California. The Circuit City Naju case does not apply here. There is no option out in this arbitration clause. There's no way out. It's a shut door, done deal, this is what you have to deal with, Mr. Poynter, as opposed to that case had an option out, so it's a major difference. And as to deciding it at this court level, Adams v. Circuit City, the contract in Adams after it came back from the Supreme Court was decided to be unconscionable at this level and then sent back to state Santa Rosa court. So the issue was decided at this state, excuse me, at this level in Adams v. Circuit City. Thank you all very much for hearing us this morning. All right, thank you. The case just argued will stand submitted.
judges: Hill, Tg Nelson, Hawkins